IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES R. WASHINGTON,

                Plaintiff,                OPINION AND ORDER

    v.
                                                            23-cv-134-wmc

LAURA SUKOWATY,

                Defendant.

---

      Representing himself, James Washington is currently incarcerated at Green Bay Correctional Institution. He was previously granted leave to proceed on an Eighth Amendment medical care claim against Dr. Laura Sukowaty, a physician employed by the Wisconsin Department of Corrections ("DOC") for failing to treat his pain, including canceling his Pregabalin prescription. Defendant has since moved for summary judgment (dkt. #31), which the court will grant due to plaintiff's failure to advance sufficient evidence from which a reasonable jury could find that Dr. Sukowaty acted with deliberate indifference to his pain when she canceled his Pregabalin prescription after a positive cocaine test or tried alternative treatments before reinstating his Pregabalin prescription.

UNDISPUTED FACTS[1]

**A. Background**

At all times relevant to this lawsuit, Washington was an inmate in DOC custody at Columbia Correctional Institution ("Columbia"), while Dr. Sukowaty was a DOC Associate Medical Director. During this period, Washington had been diagnosed with cervical radiculopathy (compressed nerve in the neck), left lumbar radiculopathy (sciatica), and carpal tunnel syndrome. These conditions caused him radicular and neuropathic pain along with peripheral neuropathy.

In October 2021, Washington was prescribed Pregabalin to treat his nerve pain. If mixed with other medicines, alcohol or illicit drugs, Pregabalin may have negative side effects. As a result, standard medical practice before prescribing a controlled substance like Pregabalin is to have a patient sign a pain management agreement. Whether or not an inmate has signed a pain management agreement or taken illicit drugs, however, DOC providers have the authority to change or discontinue prescribed medications. Further, the

---

[1] Unless otherwise noted, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as underlying, uncontradicted evidence submitted in support, all viewed in a light most favorable to Washington as the non-moving party. That said, defendant fairly objects that many of Washington's responses to her proposed findings of fact are argumentative or cite to evidence that does not support his version of the facts. Those objections are upheld. *See Proc. to be Followed on Mot. For Summ. Judg.,* § II(C), (E); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation). Specifically, the court rejects Washington's assertion that it should disregard certain of Dr. Sukowaty's uncontradicted declarations because they are "self-serving." As the Seventh Circuit has "repeatedly emphasized, . . . the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

DOC's general policy is to discontinue the administration of a controlled medication if a patient is taking illicit drugs.

Dr. Sukowaty began treating patients at Columbia in August 2022, and she initially renewed Washington's Pregabalin prescription in September 2022. Later that month, Dr. Sukowaty also prescribed Meloxicam (an anti-inflammatory) for Washington's knee injury, believing that it would also help his radicular and neuropathic pain.

### B. Dr. Sukowaty Cancels Pregabalin

On November 14, 2022, however, a nurse informed Dr. Sukowaty that Washington had tested positive for cocaine. That same day, she discontinued Washington's Pregabalin prescription because the combination of cocaine and Pregabalin could cause heart problems, like arrhythmia, and in rare cases, death. (Sukowaty Decl. (dkt. #35) ¶¶ 63, 67.)[2] Discontinuing Pregabalin without a taper can cause insomnia, anxiety, nausea, vomiting, diarrhea and mood changes. Nevertheless, Sukowaty believed it was appropriate to discontinue Washington's Pregabalin prescription without a taper because the risk of death from the combination of Pregabalin and cocaine outweighed the side effects of discontinuing the medication without a taper. (*Id.* ¶¶ 68-70.)

Dr. Sukowaty sent a letter to Washington explaining that his recent urine test was positive for cocaine, and his Pregabalin prescription was discontinued in accordance with

---

[2] Washington argues that there is no evidence showing that the combination of Pregabalin and cocaine can have harmful side effects, but Dr. Sukowaty's declaration adequately supports that fact, and she was disclosed as an expert witness who would testify about, among other things, best practices related to controlled substances like Pregabalin. (Dkt. #34, at 2.) Absent some evidence to the contrary, neither this court nor a reasonable jury would have a basis to reject this expert opinion, much less Dr. Sukowaty's good faith in acting on it.

3

the pain management agreement, which she assumed he had signed. She later reviewed his record and learned he had not signed this standard agreement. (*Id.* ¶¶ 71, 73.) Regardless, a signed pain management agreement was not required for Sukowaty to discontinue his Pregabalin prescription.

### C. Washington Tries Other Treatments

As of November 14, Washington still had prescriptions for acetaminophen (pain reliever) and Meloxicam, which Dr. Sukowaty believed would allow him to manage his pain, particularly because his Meloxicam prescription was at the highest allowable dose. (*Id.* ¶ 78.) About a week later, a Columbia Health Services Manager also asked Dr. Sukowaty if she wanted to replace Washington's prescription for Pregabalin. Based on Sukowaty's review of his imaging and offsite reports, she decided to prescribe him Amitriptyline, an antidepressant often used to treat nerve pain.[3]

Later that month, Washington addressed two health service requests ("HSRs") to Dr. Sukowaty, complaining about his ongoing pain and arguing that he never signed a pain management agreement. Sukowaty responded that he was currently on Meloxicam, and she would start him on Carbamazepine, an anti-convulsant used to treat nerve pain. Dr. Sukowaty asserts that she decided to prescribe Carbamazepine after learning that Washington had been refusing Amitriptyline (*id.* ¶ 92), while Washington asserts that he was unaware he had such a prescription. (Washington Decl. (dkt. #46) ¶ 10; Pl.'s Ex. 5

---

[3] Washington avers in his declaration that he did not receive a replacement medication for Pregabalin until December 2022 (Washington Decl. (dkt. #46) ¶ 10), but it is undisputed at summary judgment that Dr. Sukowaty prescribed him Amitriptyline in November 2022.

(dkt. #46-5) 1.) Regardless, at a follow-up December 2 appointment, Sukowaty discontinued Washington's Amitriptyline prescription, replacing it with Carbamazepine.

Two days after his appointment, Washington addressed another HSR to Dr. Sukowaty, stating that it had been three weeks since his Pregabalin prescription was discontinued and he was still without effective medication. Dr. Sukowaty responded that he had another appointment scheduled. Although the appointment was scheduled for about a month later, Dr. Sukowaty did not believe it was necessary to move up the appointment because he was being treated with acetaminophen and Meloxicam and was about to start Carbamazepine. (Sukowaty Decl. (dkt. #35) ¶ 99.) Also, Dr. Sukowaty wanted to see how Washington responded to Carbamazepine before seeing him again. (*Id*. ¶ 100)

On December 9, Washington had an appointment with University of Wisconsin ("UW") Neurosurgery for an assessment of his hip and shoulder pain. At that appointment, the neurosurgeon recommended no further "workup" of his lumbar and cervical spine, instead recommending that he follow-up with sports medicine.[4] (Ex. 1000 (dkt. #35-1) 47-48.) Washington addressed another HSR to Dr. Sukowaty on December 14 in which he complained that he was not being sent back to an offsite provider, but Sukowaty wrote "F/U Done," because Washington just had his follow-up appointment with UW Neurosurgery.

---

[4] Plaintiff asserts, without evidence, that Dr. Sukowaty prevented him from following up with UW Neurosurgery.

On January 5, 2023, Dr. Sukowaty met with Washington for a follow-up appointment, and he reported that Carbamazepine was also not helping his pain, so Dr. Sukowaty referred Washington back to neurosurgery for pain and continued him on Carbamazepine.[5]  However, Dr. Sukowaty opted not to increase his dose of Carbamazepine at that time because it sometimes took several weeks for patients to experience its therapeutic effects.  (Sukowaty Decl. (dkt. #116) ¶ 112.)  The next day, the Columbia Health Services Unit received a call from UW Neurosurgery recommending that Washington see orthopedics or sports medicine instead, so Sukowaty approved canceling the neurosurgery referral.

A few days after his January 5 appointment, Washington addressed an HSR to Dr. Sukowaty complaining that she did not perform a physical exam, and the only thing they discussed were various ineffective medications.  She responded that he had another appointment coming up.  At that time, Washington was scheduled to see Sukowaty on February 9 and to see an orthopedic specialist on February 17, but he did not know the specific dates of the appointments.  Sukowaty did not believe that it was necessary to move up his February 9 appointment because his "pain was being addressed with the Carbamazepine, and he had not reached the maximum therapeutic effect from it yet." (Sukowaty Decl. (dkt. #35) ¶ 122.)

---

[5] Washington asserts that body camera footage shows that Dr. Sukowaty was dismissive of his complaints of shoulder pain at his January 5 appointment, but there is no body camera footage in the record.  Moreover, the court ordered the parties to work together so that plaintiff could view the video footage and granted him multiple extensions of time to file his brief opposing summary judgment (dkt. ##30, 38, 40), but he did not provide the video footage to the court at summary judgment.

6

Because Washington believed that Carbamazepine was inadequate to address his pain, he addressed two more HSRs to Sukowaty on January 12 complaining of ongoing pain. Dr. Sukowaty again responded that he had upcoming appointments with her and an orthopedic specialist. Also, Dr. Sukowaty wanted Washington to "gain some therapeutic effect" from Carbamazepine before increasing its dosage or changing medications. (*Id.* ¶ 125.) Washington submitted another HSR on January 15, asking for a referral to a pain specialist, and Dr. Sukowaty responded that she had placed an order for a pain clinic consult. Although Washington asserts that he never had the pain clinic consult, he acknowledges being seen by a physical therapist on February 1, who issued him a TENS unit (a small electrical device that helps block pain), and Sukowaty signed off on that order.

### D. Dr. Sukowaty Re-Prescribes Pregabalin

At a February 9 appointment with Dr. Sukowaty, Washington explained that he understood why she had discontinued his Pregabalin prescription, but Carbamazepine was not helping him. Sukowaty agreed to restart Washington on Pregabalin if he signed the pain management agreement, with the understanding that she would discontinue the medication if he tested positive for illegal drugs or refused blood draws. After also warning him that there was no room for any deviation from that agreement, Dr. Sukowaty re-prescribed Pregabalin.

## OPINION

Defendant moves for summary judgment, arguing that she could not be found deliberately indifferent because: (1) she exercised her professional judgment in

7

discontinuing plaintiff's Pregabalin without a taper given the risks with his cocaine use; and (2) she did not disregard a risk to his health or safety, believing the medications she prescribed in place of Pregabalin would provide adequate pain relief, and re-prescribing Pregabalin when they did not.  Plaintiff responds that defendant improperly canceled his Pregabalin prescription without a taper which caused him to experience withdrawal symptoms.  He also criticizes defendant for persisting in an ineffective course of treatment after canceling Pregabalin by not reinstating that prescription at his January 5 appointment.

    Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009) (alteration adopted and quotation marks omitted).[6]

    The Eighth Amendment gives prisoners the right to receive adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  To prevail on a claim of constitutionally inadequate medical care, however, an inmate must prove two elements: (1) an objectively serious

---

[6] As a preliminary initial matter, defendant asserts that plaintiff's claims should be dismissed because he did not file his summary judgment response materials by the July 26, 2024, deadline. (Def.'s Reply Br. (dkt. #47) 2-3.)  However, plaintiff signed his brief in opposition on July 26 (dkt. #44, at 7), and when a prisoner represents himself, his legal documents are typically "'considered filed on the date that [they were] tendered to prison staff in accordance with reasonable prison policies,' which is usually [the] date the prisoner signed the document." *Over v. Haseleu*, No. 20-C-1542, 2021 WL 1626615, at *5 (E.D. Wis. Apr. 27, 2021) (quoting *Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015)).  Absent reason to believe the July 26 dating was fraudulent, the court accepts Washington's response as timely.

medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Defendant does not seek judgment on the ground that plaintiff's pain did not constitute a serious medical condition, instead she focuses her arguments on the deliberate indifference element.

"Deliberate indifference" requires proof that the official was aware the prisoner faced a substantial risk of serious harm, but disregarded that risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Deliberate indifference constitutes *more than* negligent acts, or even grossly negligent acts, although it requires something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The threshold for deliberate indifference is generally met where "the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.

Because defendant is a medical professional, the relevant question under the Eighth Amendment is whether her actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). The Seventh Circuit has recognized that pain control requires the application of "medical expertise and judgment." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

On the record here, no reasonable jury could find that defendant was deliberately indifferent to a substantial risk of harm to plaintiff. To begin, it is undisputed that plaintiff tested positive for cocaine before defendant canceled his Pregabalin prescription. Cocaine combined with Pregabalin can cause serious health issues -- like arrhythmia -- and in rare

9

cases, death, so a reasonable jury could not find that defendant acted with deliberate indifference when she opted to cancel plaintiff's Pregabalin prescription. Indeed, given that plaintiff faced a potentially fatal drug interaction if he continued taking Pregabalin and cocaine in tandem, defendant's outright cancelation of plaintiff's Pregabalin prescription was *the opposite of* deliberate indifference.

In fairness to plaintiff, he presents evidence suggesting that Pregabalin should be gradually tapered over a week because abrupt cancellation of the medication, particularly in patients who have abused it, can cause "life-threatening" symptoms, including "withdrawal seizures" and other symptoms like insomnia, nausea, headache, anxiety, hyperhidrosis (excessive sweating), and diarrhea. (Pl.'s Ex. 28 (dkt. #46-28) at 2, 4). Still, defendant exercised her medical judgment in determining that the risk of a harmful drug interaction between Pregabalin and cocaine outweighed any risk of withdrawal symptoms from discontinuing Pregabalin without a taper, and plaintiff fails to offer evidence from which a reasonable jury could find "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 65, 655 (7th Cir. 2008); *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). Nor is this a finding that a lay jury could second guess without expert testimony given the need to weigh unknown, relative medical risks associated with mixing cocaine with Pregabalin versus the arguably lesser risks of plaintiff suffering from

withdrawal.[7]  The court's own research has not revealed articles specifically addressing harmful drug interactions between cocaine and Pregabalin, but the court's research generally shows that Pregabalin can harmfully interact with other drugs,[8] so there is no reason for the court to doubt defendant's assertion that the combination of cocaine and Pregabalin posed a risk to plaintiff.

Nor could a reasonable jury find that defendant was deliberately indifferent to plaintiff's pain after she canceled his Pregabalin prescription.  First, when defendant discontinued plaintiff's Pregabalin prescription, it is undisputed that she knew that he had prescriptions for acetaminophen and Meloxicam, which she believed could adequately manage plaintiff's pain.  (Sukowaty Decl. (dkt. #35) ¶ 78.)  Moreover, within eight days, after reviewing plaintiff's medical records, she opted to prescribe him Amitriptyline to help his nerve pain, though the parties dispute whether staff offered the medication to plaintiff. Regardless, by December 2, 2022 -- less than three weeks after defendant canceled plaintiff's Pregabalin prescription -- she had replaced his Amitriptyline prescription with another pain reliever, Carbamazepine.

Second, although plaintiff reported at a January 5, 2023, appointment that Carbamazepine was not helping, defendant reasonably explained that she chose not to

---

[7] Plaintiff makes much of defendant incorrectly telling him that he had violated his pain management agreement by using cocaine because he never signed it, but defendant's mistaken belief alone does not support a finding that she acted with deliberate indifference.  That is especially true when it is undisputed that defendant had the discretion to discontinue plaintiff's Pregabalin prescription even without a signed pain management agreement.

[8]  *Pregabalin*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/pregabalin-oral-route/before-using/drg-20067411?p=1 (last visited Sept. 6, 2024).

increase his Carbamazepine dose at that time because it could take several weeks for the medication to have therapeutic effect, and this additional exercise of defendant's medical judgment is not enough for a reasonable jury to find deliberate indifference. (*Id.* ¶ 112.) Moreover, it is undisputed that during this same time, defendant referred plaintiff for an appointment with UW Neurosurgery (although UW Neurosurgery later recommended canceling the referral). Indeed, in the time between plaintiff's January and February appointments, defendant: (1) referred him to a pain specialist; and (2) approved a TENS unit to help with his nerve pain. Finally, on February 9, less than three months after defendant initially canceled plaintiff's Pregabalin prescription, she re-prescribed him the medication, albeit under strict instructions to plaintiff that she would discontinue it again upon evidence that he was using cocaine or attempting to thwart detection of his use. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts examine the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs).

At bottom, while plaintiff persistently complained of pain after defendant canceled his Pregabalin prescription, defendant did not persist in an ineffective course of treatment for his pain, as she saw him for monthly appointments and tried several alternative pain treatments during the three months that he was without Pregabalin, including medications, specialist referrals and a TENS unit. Finally, when his pain persisted despite her attempts to find an effective alternative treatment, she restarted him on Pregabalin. Although plaintiff wishes that defendant had restarted him sooner, he was not entitled to demand a particular course of treatment, *Harris v. Molinero*, 803 F. App'x 1, 5 (7th Cir. 2020), and a

12

reasonable jury is left with no more than a defendant who exercised her professional judgment in deciding to try treatments other than Pregabalin for three months after plaintiff tested positive for cocaine.  Even if defendant could be found to have been negligent or even grossly negligent, there is no evidentiary basis to find that defendant acted with deliberate indifference.  Thus, defendant's motion for summary judgment is granted.[9]

ORDER

IT IS ORDERED that:

1) Defendant Laura Sukowaty's motion for summary judgment (dkt. #31) is GRANTED.

2) The clerk of court is directed to enter judgment for the defendants and close this case.

3) Defendant's motion to stay the pretrial deadlines (dkt. #49) is DENIED AS MOOT.

Entered this 6th day of September, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[9] Given this ruling, the court need not address defendant's qualified immunity argument.